**LAW OFFICES OF GREGG S. SODINI, LLC**
500 Harding Road
Freehold, New Jersey 07728
(732) 431-0011
Fax (732) 431-2022
GSS (1766)
*Attorneys for Defendant Bank of America, N.A.*

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| BERGWELL LAW FIRM, P.C.,<br><br>   *Plaintiff*,<br> v.<br><br>BANK OF AMERICA, N.A., GLOBAL STAINLESS SUPPLY, INC., SUMITOMO CORPORATION OF AMERICA,<br><br>   *Defendants.* | Civil Action No.<br><br><br>**NOTICE OF REMOVAL** |

**TO THE HONORABLE JUDGES OF THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF NEW JERSEY:**

Defendant Bank of America, N.A. ("BOA") hereby gives notice that the action captioned, <u>Bergwall Law Firm, P.C. v. Bank of America, N.A., Global Stainless Supply, Inc., Sumitomo Corporation of America</u>, filed in the Superior Court of New Jersey, Essex County, Law Division, Docket No. ESX-L-6154-10 (the "Action"), is hereby removed to the United States District Court for the District of New Jersey, pursuant to 28 <u>U.S.C.A.</u> §§ 1332, 1441 and 1446.  Removal is proper for the reasons set forth below:

### <u>This Notice is Timely Filed</u>

1.  Plaintiff Bergwall Law Firm, P.C. ("Plaintiff") originated the Action by filing its Verified Complaint (the "Complaint") and application for Order to Show Cause

1

Without Temporary Restraints in the Superior Court of New Jersey, Essex County, Law Division on or about July 21, 2010.

2.   The Superior Court of New Jersey, Essex County, Law Division entered an Order to Show Cause Without Temporary Restraints on or about July 30, 2010.

3.   The Order to Show Cause Without Temporary Restraints was served, by hand delivery, upon BOA on or about August 9, 2010.

4.   True and correct copies of the Order to Show Cause Without Temporary Restraints, along with Plaintiff's Verified Complaint and Memorandum of Law in Support of Order to Show Cause Application Seeking Preliminary Injunctive Relief, are attached hereto as Exhibit A.  No other pleadings have been filed in the Action to date.

5.   This Notice is timely filed within thirty (30) days of the date BOA's receipt of service of the Order to Show Cause Without Temporary Restraints.  28 U.S.C.A. §1446.

### This Court Has Original Diversity Jurisdiction Over the Action Pursuant to 28 U.S.C.A. § 1332

6.   Plaintiff pleads that it is a law firm organized as a Professional Corporation under the laws of the State of New Jersey and maintains an office in Cherry Hill, New Jersey as well as its primary office at 165 Passaic Avenue, Fairfield, New Jersey 07004. *See* Complaint, ¶ 5.

7.   BOA is a national banking association chartered by the Office of the Comptroller of the Currency of the United States Treasury Department with its designated main office at 100 North Tyron Street, Charlotte, North Carolina 28255. Pursuant to 28 U.S.C.A. § 1348, all national banking associations "shall … be deemed citizens of the States in which they are respectively located."  The United States Supreme Court has held that "a national bank, for § 1348 purposes, is a citizen of the State in

which its main office, as set forth in its articles of association, is located." <u>Wachovia Bank, N.A. v. Schmidt</u>, 546 <u>U.S.</u> 303, 307, 126 <u>S.Ct.</u> 941, 945, 163 <u>L.Ed.2d</u> 797 (2006).

8.   Plaintiff pleads that Defendant Global Stainless Supply, Inc. ("GSS") is a corporation with its principal place of business located at 8900 Railwood Drive, Suite A, Houston, Texas 77078.

9.   Defendant Sumitomo Corporation of America is a corporation with its headquarters and principal place of business located at 600 Third Avenue, New York, New York 10016-2026.

10. Complete diversity of citizenship exists between the parties in this matter.

11. Plaintiff's Complaint alleges damages in excess of $75,000.00, exclusive of interest and costs. *See* Complaint, ¶¶ 19, 24.

12. This Court therefore has original jurisdiction over this Action pursuant to 28 <u>U.S.C.A.</u> § 1332 and removal of this Action is appropriate pursuant to 28 <u>U.S.C.A.</u> § 1441.

## The Court Also Has Original Federal Question Jurisdiction Over the Action Pursuant to 28 U.S.C.A. § 1331

13. Plaintiff's Complaint alleges generally as follows.  On or about March 29, 2010, Plaintiff agreed to represent a new client who purported to be a Japanese firm, Nagano Japan Radio Company, Ltd. (the "New Client") for the stated purpose of collecting debts owed by customers of the New Client in the United States.  Complaint ¶8.  On or about April 14, 2010, Plaintiff received on account of the New Client an item that purported to be an "Official Check" numbered 017232 (the "Check"), in the amount of $123,500.00, purportedly drawn on an account of Defendant Global Stainless Supply, Inc.  Complaint ¶ 9.  At approximately 10:59 a.m. on April 14, 2010, Plaintiff deposited

the Check into its attorney trust account at BOA (the "Account").  Complaint ¶ 9.  On or

about April 15, 2010, at the direction of the New Client, Plaintiff wired funds in the

amount of $104,975.00 out of its Account to an account at HSBC in Malaysia.

Complaint ¶ 10.  On or about May 15, 2010, the Check was returned unpaid, because it

turned out to be a counterfeit check.  Complaint ¶ 11.  BOA charged back Plaintiff's

Account in the amount of the Check, leaving a negative balance in the Account.

Complaint ¶ 13.

      14. This Action presents a Federal Question over which this Court has original

jurisdiction because Count IV ("Negligence as to Regulation CC") alleges failure to

follow guidance issued to national banks by the Office of the Comptroller of the

Currency of the United States Treasury Department ("OCC") in OCC Bulletin 2007-2,

titled "Guidance to National Banks Concerning Schemes Involving Fraudulent Cashier's

Checks" (Complaint ¶¶ 38-42) and Count V ("Violation of Regulation CC") alleges

violation of Federal Regulation CC (12 CFR §§229.1 *et seq.*) ("Reg. CC") (Complaint ¶¶

51-56).  Counts IV and V of the Complaint rely on Reg. CC and on OCC Bulletin 2007-2

and turn on the construction of that federal regulation and bulletin.  28 U.S.C.A. §§ 1441,

1331.

      15. A defendant may remove a case if the claim could have been brought in

federal court either because the claim relies on federal law or because the claim

necessarily turns on some construction of federal law.  28 U.S.C.A. § 1441(b).  A case

necessarily "arises under" federal law when a plaintiff's complaint relies on federal law

as the source of recovery.  Orlick v. J.D. Carton & Son, Inc., 144 F. Supp. 2d 337, 343

(D.N.J. 2001), *citing* Ethridge v. Harbor House Rest., 361 F.2d 1389, 1394 (9th Cir.

1988).  Further, a case may "arise under" federal law "where vindication of a right under state law necessarily turn[s] on some construction of federal law." Id., *citing* Merrell Dow Pharm., Inc. v. Thompson, 478 U.S. 804, 808-09, 106 S.Ct. 3229 (1986).

16. This Court therefore has original jurisdiction over this Action pursuant to 28 U.S.C.A. § 1331 and removal of this Action is appropriate pursuant to 28 U.S.C.A. § 1441.

WHEREFORE, notice is given that the Action is hereby removed to the United States District Court for the District of New Jersey.

**LAW OFFICES OF GREGG S. SODINI, LLC**
500 Harding Road
Freehold, New Jersey 07728
(732)431-0011
*Attorneys for Defendant Bank of America, N.A.*

By: _____
          Gregg S. Sodini, Esq.

Dated: September 2, 2010

cc:    Clerk, Superior Court of New Jersey
       Essex County Courts Building
       Customer Service
       50 West Market Street, Room 131
       Newark, NJ  07102

       Thomas Bergwall, Esq.
       BERGWALL LAW FIRM, P.C.
       165 Passaic Avenue, Suite 304
       Fairfield, NJ 07004

       Global Stainless Supply, Inc.
       8900 Railwood Drive
       Houston, TX 77078-4535

       Sumitomo Corporation of America
       600 Third Avenue
       New York, NY 10016-2001

# EXHIBIT A

**BERGWALL LAW FIRM, P.C.**
**165 PASSAIC AVENUE**
**SUITE 304**
**FAIRFIELD, NJ 07004**

tb@Bergwalllawfirm.com

Phone number: (973) 276-6100
Facsimile:      (973) 276-6169

Thomas P. Bergwall, Esq.*          *RESPOND TO FAIRFIELD ADDRESS*
Mark S. D'Amore, Esq.#

*Member NJ & NY Bar
#Member NJ Bar

SUPERIOR COURT OF NJ
CIVIL DIVISION
ESSEX VICINAGE

2010 JUL 21  A 11: 42

FINANCE DIVISION
RECEIVED/FILED
27

<u>Cherry Hill Office</u>
1913 Greentree Road, Suite A
Cherry Hill, New Jersey 08003
856-874-4474 (P)
856-874-4476 (F)

July 21, 2010

<u>VIA HAND DELIVERY</u>
Civil Division Manager
Essex County
Historic Courthouse
470 Dr. Martin Luther King, Jr. Blvd.
Newark, NJ 07102

Re:     <u>Bergwall Law Firm, P.C. v. Bank of America, N.A. et al.</u>

Dear Sir:

        We represent the Plaintiff in this case.  Enclosed for filing please find the original plus one copy of the following that the Plaintiff submits in support of its Order To Show Cause application for preliminary injunctive relief (without temporary restraints):

   1.    Civil Case Information Statement;

   2.    Verified Complaint, Jury Demand, and Designation of Trial Counsel;

   3.    Certification of Thomas Bergwall, Esq.;

   4.    Certification of Notice to Adversaries;

   5.    Plaintiff's Memorandum of Law in Support of Its Order To Show Cause Application for Preliminary Injunctive Relief;

   6.    Proposed form of Order to Show Cause;

   7.    $200 check to cover the filing fee for the Verified Complaint; and

C:\Documents and Settings\Tom Bergwall\My Documents\OTSC B OF A\Letter to Court 7-19-10.doc

8.      $30 check to cover the filing fee for the Order To Show Cause motion.

Please present the foregoing Order To Show Cause to be considered by a Judge of the Superior Court as soon as possible.  Please stamp the enclosed copies of the foregoing documents "Filed" and return same to us in the stamped, self-addressed, return envelope enclosed for your convenience.

Thank you for your anticipated cooperation in this regard.

Very truly yours,

Thomas Bergwall

TB/tf
Enclosures

Appendix XII-B1

# CIVIL CASE INFORMATION STATEMENT
## (CIS)



Use for initial Law Division
Civil Part pleadings (not motions) under Rule 4:5-1
**Pleading will be rejected for filing, under Rule 1:5-6(c),
if information above the black bar is not completed or
if attorney's signature is not affixed.**

**FOR USE BY CLERK'S OFFICE ONLY**

PAYMENT TYPE: ☐CK ☐CG ☐CA

CHG/CK NO.

AMOUNT:

OVERPAYMENT:

BATCH NUMBER:

| ATTORNEY/PRO SE NAME | TELEPHONE NUMBER | COUNTY OF VENUE |
|---|---|---|
| THOMAS BERGWALL, ESQ. | (973) 276-6100 | Essex |

FIRM NAME (If applicable)

BERGWALL LAW FIRM, P.C.

DOCKET NUMBER (When available)

OFFICE ADDRESS

165 PASSAIC AVENUE, SUITE 304
FAIRFIELD, NJ 07004

DOCUMENT TYPE

COMPLAINT

JURY DEMAND          ☒ YES          ☐ NO

NAME OF PARTY (e.g., John Doe, Plaintiff)

Bergwall Law Firm, P.C.

CAPTION

Bergwall Law Firm, P.C.
v.
Bank of America, N.A. et al.

CASE TYPE NUMBER
(See reverse side for listing)

599

IS THIS A PROFESSIONAL MALPRACTICE CASE?          ☐ YES          ☒ NO

IF YOU HAVE CHECKED "YES," SEE N.J.S.A. 2A:53A-27 AND APPLICABLE CASE LAW REGARDING YOUR OBLIGATION TO FILE AN AFFIDAVIT OF MERIT.

RELATED CASES PENDING?          ☐ YES          ☒ NO

IF YES, LIST DOCKET NUMBERS

DO YOU ANTICIPATE ADDING ANY PARTIES (arising out of same transaction or occurrence)?          ☐YES          ☒ NO

NAME OF DEFENDANT'S PRIMARY INSURANCE COMPANY, IF KNOWN

☐ NONE
☒ UNKNOWN

**THE INFORMATION PROVIDED ON THIS FORM CANNOT BE INTRODUCED INTO EVIDENCE.**

CASE CHARACTERISTICS FOR PURPOSES OF DETERMINING IF CASE IS APPROPRIATE FOR MEDIATION

DO PARTIES HAVE A CURRENT PAST OR RECURRENT RELATIONSHIP?          ☒ YES          ☐ NO

IF YES, IS THAT RELATIONSHIP          ☐ EMPLOYER-EMPLOYEE          ☐ FRIEND/NEIGHBOR          ☐ OTHER (explain)
☐ FAMILIAL          ☒ BUSINESS

DOES THE STATUTE GOVERNING THIS CASE PROVIDE FOR PAYMENT OF FEES BY THE LOSING PARTY?          ☒ YES          ☐ NO

USE THIS SPACE TO ALERT THE COURT TO ANY SPECIAL CASE CHARACTERISTICS THAT MAY WARRANT INDIVIDUAL MANAGEMENT OR ACCELERATED DISPOSITION:

NONE

DO YOU OR YOUR CLIENT NEED ANY DISABILITY ACCOMMODATIONS?          ☐YES          ☒ NO

IF YES, PLEASE IDENTIFY THE REQUESTED ACCOMMODATION:

WILL AN INTERPRETER BE NEEDED?          ☐YES          ☒ NO

IF YES, FOR WHAT LANGUAGE:

I certify that confidential personal identifiers have been redacted from documents now submitted to the court, and will be redacted from all documents submitted in the future in accordance with Rule 1:38-7(b).

ATTORNEY SIGNATURE:          THOMAS P. BERGWALL, ESQ.
ATTORNEY AT LAW OF NEW JERSEY          7/19/10

Revised Effective 9/2009, CN 10517

 

# CIVIL CASE INFORMATION STATEMENT
## (CIS)
Use for initial pleadings (not motions) under *Rule* 4:5-1

**CASE TYPES** (Choose one and enter number of case type in appropriate space on the reverse side.)

**Track I — 150 days' discovery**
- 151   NAME CHANGE
- 175   FORFEITURE
- 302   TENANCY
- 399   REAL PROPERTY (other than Tenancy, Contract, Condemnation, Complex Commercial or Construction)
- 502   BOOK ACCOUNT (debt collection matters only)
- 505   OTHER INSURANCE CLAIM (INCLUDING DECLARATORY JUDGMENT ACTIONS)
- 506   PIP COVERAGE
- 510   UM or UIM CLAIM
- 511   ACTION ON NEGOTIABLE INSTRUMENT
- 512   LEMON LAW
- 801   SUMMARY ACTION
- 802   OPEN PUBLIC RECORDS ACT (SUMMARY ACTION)
- 999   OTHER (Briefly describe nature of action)

**Track II — 300 days' discovery**
- 305   CONSTRUCTION
- 509   EMPLOYMENT (other than CEPA or LAD)
- 599   CONTRACT/COMMERCIAL TRANSACTION
- 603   AUTO NEGLIGENCE -- PERSONAL INJURY
- 605   PERSONAL INJURY
- 610   AUTO NEGLIGENCE – PROPERTY DAMAGE
- 699   TORT – OTHER

**Track III — 450 days' discovery**
- 005   CIVIL RIGHTS
- 301   CONDEMNATION
- 602   ASSAULT AND BATTERY
- 604   MEDICAL MALPRACTICE
- 606   PRODUCT LIABILITY
- 607   PROFESSIONAL MALPRACTICE
- 608   TOXIC TORT
- 609   DEFAMATION
- 616   WHISTLEBLOWER / CONSCIENTIOUS EMPLOYEE PROTECTION ACT (CEPA) CASES
- 617   INVERSE CONDEMNATION
- 618   LAW AGAINST DISCRIMINATION (LAD) CASES
- 620   FALSE CLAIMS ACT

**Track IV — Active Case Management by Individual Judge / 450 days' discovery**
- 156   ENVIRONMENTAL/ENVIRONMENTAL COVERAGE LITIGATION
- 303   MT. LAUREL
- 508   COMPLEX COMMERCIAL
- 513   COMPLEX CONSTRUCTION
- 514   INSURANCE FRAUD
- 701   ACTIONS IN LIEU OF PREROGATIVE WRITS

**Centrally Managed Litigation (Track IV)**
- 280   Zelnorm
- 285   Stryker Trident Hip Implants

**Mass Tort (Track IV)**

| | | | |
|---|---|---|---|
| 248 | CIBA GEIGY | 279 | GADOLINIUM |
| 266 | HORMONE REPLACEMENT THERAPY (HRT) | 281 | BRISTOL-MYERS SQUIBB ENVIRONMENTAL |
| 271 | ACCUTANE | 282 | FOSAMAX |
| 272 | BEXTRA/CELEBREX | 283 | DIGITEK |
| 274 | RISPERDAL/SEROQUEL/ZYPREXA | 284 | NUVARING |
| 275 | ORTHO EVRA | 286 | LEVAQUIN |
| 277 | MAHWAH TOXIC DUMP SITE | 601 | ASBESTOS |
| 278 | ZOMETA/AREDIA | 619 | VIOXX |

If you believe this case requires a track other than that provided above, please indicate the reason on Side 1,
in the space under "Case Characteristics."
Please check off each applicable category:
☐ Verbal Threshold        ☐ Putative Class Action        ☐ Title 59

Revised Effective 9/2009, CN 10517

**BERGWALL LAW FIRM, P.C.**
165 Passaic Avenue
Fairfield, New Jersey 07004
Attorneys for the Plaintiff
Phone: (973) 276-6100
Fax:    (973) 276-6169
Email:  tb@bergwalllawfirm.com

SUPERIOR COURT OF NJ
CIVIL DIVISION
ESSEX VICINAGE

2010 JUL 21  A 11: 42

FINANCE DIVISION
RECEIVED/FILED
27

| | |
|---|---|
| BERGWALL LAW FIRM, P.C., | SUPERIOR COURT OF NEW JERSEY |
| Plaintiff, | LAW DIVISION: ESSEX COUNTY |
| vs. | DOCKET NO. |
| BANK OF AMERICA, N.A., GLOBAL STAINLESS SUPPLY, INC., SUMITOMO CORPORATION OF AMERICA, | *CIVIL ACTION* |
| Defendants. | **VERIFIED COMPLAINT, JURY DEMAND and DESIGNATION OF TRIAL COUNSEL** |

## OVERVIEW

1. This is an action brought by a law firm (the "Plaintiff") against the bank where it maintains its IOLTA trust account. In the course of performing collection work for a client the Plaintiff collected a check for the client, and deposited that check into its IOLTA account to make the check/funds available for disbursement in accord with instructions received from its client. The bank subsequently advised Plaintiff that the funds were available, at which time Plaintiff wired the money out of its IOLTA account in accordance with instructions received from its client. The check in question was drawn from an account from the same bank that that the Plaintiff maintains its IOLTA account. Thereafter the Bank changed its advices to Plaintiff, instead advising the Plaintiff that the check which had been deposited was counterfeit, that the funds were not available, at which time the bank charged back and froze Plaintiff's IOLTA account thereby both (i) creating an overdraft in the account, and (ii) preventing Plaintiff from accessing the IOLTA account to withdraw

1

therefrom segregated funds belonging to other clients of the firm held in various other distinct and separate sub-accounts.

2. After being notified that the check was a counterfeit, Plaintiff began investigating the matter. As a result of its investigation Plaintiff has learned that the account on which the check was drawn had previously experienced approximately ten similar counterfeit checks being drawn on it, that the customer on that other account had requested that the bank close the account because of the customer's experiences with the ten prior counterfeit checks, but that the bank failed and refused to close said account despite being requested by the customer to do so.

3. Based upon these events Plaintiffs asserts the claims set forth in this Verified Complaint against the bank (and others). Plaintiff seeks the ultimate relief set forth in each of the counts of this Verified Complaint. In addition, Plaintiff seeks the entry of an Order To Show Cause, without temporary restraints, requiring the Defendants to show cause, on a date to be set by the Court, why the following preliminary injunctive relief should not be awarded to the Plaintiff herein:

- An Order directing and requiring the bank to unfreeze Plaintiff's IOLTA account in order to allow Plaintiff to access the funds of other clients of the firm;

- In connection with the unfreezing of the IOLTA account, an Order directing and requiring the bank to credit the IOLTA account so as to, inter alia, deposit back into the account the check amount in question as opposed to leaving the account in an overdrawn/negative balance state; and

- An Order awarding Plaintiff certain limited expedited discovery, directing and requiring the Defendants to produce certain documents that Plaintiff needs immediately relative to this matter. The limited immediate documents sought are set forth in the proposed form of Order to Show Cause submitted herewith.

2

## JURISDICTION AND VENUE

4.  Jurisdiction is proper in Essex County as Plaintiff is located in Essex County, New Jersey, the suit arises under the laws of the State of New Jersey, and Plaintiff has suffered all damages within the jurisdictional limits of this Court.   Venue is proper in Essex County, New Jersey.  Specifically all or part of the cause(s) of action occurred in Essex County, New Jersey and the Defendant, Bank of America, N.A. has offices throughout the County. Defendant Global Stainless Supply, Inc. conducts business throughout the United States and is a subsidiary of Sumitomo Corporation of American that is located at 600 Third Avenue New York, NY 10016-2001.

## PLAINTIFF

5.  Plaintiff, Bergwall Law Firm, P.C. (hereinafter "BLF or Plaintiff") is a law firm organized as a Professional Corporation under the laws of the State of New Jersey.  The firm has been in existence for approximately seventeen (17) years.  BLF maintains an office in Cherry Hill, New Jersey as well as its primary office at 165 Passaic Avenue, Fairfield, New Jersey 07004.

## DEFENDANTS

6.  Defendant, Bank of America, NA ("bank or BA") is a national bank and maintains an office at 597 Passaic Avenue, West Caldwell, New Jersey 07006.  Plaintiff maintained a banking relationship with Bank of America, NA at all times relevant to this action.

7.  Defendant, Global Stainless Supply, Inc. ("Global or GSS"), is a corporation with a principal place of business at 8900 Railwood Drive, Suite A, Houston, Texas   77078.  GSS is a distributor of stainless steel pipe, flanges and fittings and is a worldwide concern. The company was created when Sumitomo Corporation of America (SCOA), a Japanese concern, merged operations with a company directed by William Bootz, the current President of GSS, in 2002.   Plaintiff deposited an Official Check drawn from GSS and has

3

in its possession a second check in the amount of two-hundred and twenty-five thousand three-hundred ($225,300.00) dollars drawn from the same account yet not deposited. Evidently, this check is counterfeit although BLF has not been provided any proof as to its lack of authenticity by any of the Defendants.  Global Stainless Supply, Inc. conducts business in New Jersey.  Global Stainless Supply, Inc. is a subsidiary and/or affiliate of Sumitomo Corporation of America which is based in New York City.

## FACTS COMMON TO ALL COUNTS

8.  BLF was retained on or about March 29, 2010 by a Japanese firm, Nagano Japan Radio Company Ltd. ("Nagano") to pursue the balance of a debt due and owing to Nagano from one of its customers located in the United States.   BLF agreed to represent Nagano on a contingency basis of 15% of the amount collected.  The amount outstanding to Nagano was six-hundred and fifty-four thousand ($654,000.00) dollars.

9.  On April 14, 2010, BLF received Bank of America official check number 017232 dated April 13, 2010 and drawn from GSS' account.  GSS maintained at all relevant times a business account with Bank of America bearing account number ███████████   At 10:59 a.m. on April 14, 2010, the check was deposited into BLF's IOLTA Trust Account and within the fiduciary sub-account entitled "Nagano – 08418".

10.  On Thursday, April 15, 2010, BLF wired the net funds in the amount of one-hundred four thousand nine-hundred and seventy-five ($104,975.00) dollars to Nagano through an HSBC account located in New York City. The funds were then routed to an HSBC account in Malaysia.  In order to wire transmit the funds, BLF is required to contact BA's wiring room and follow protocol relative to the wiring of the funds.  The protocol ostensibly exists to verify that the funds have been "cleared" and made "available" in order for the wire

4

transaction to be consummated. BLF was required then to "call back" or to verify the wire transaction following the initial call directing the payment of the wire to the specific wiring destination. Relying upon BA's representation that the check had been paid by BA, BLF verified the wire and the money was released from Plaintiff's IOLTA account. BLF has proof that the money had been withdrawn from GSS' account on 4/14/2010 and credited to BLF's account prior to the wiring of the funds.

11. On Monday, April 19, 2010, and despite BA's representation that the check had been honored and paid, BLF was notified by a BA employee that the Bank of America official check number 017232 was "counterfeit". BLF immediately attempted to rescind the wire and was provided, through BA, the reference number of 4211-19APRIL10. (Since this date, BLF became aware that BA reversed the funds into GSS' account the same day the wire was transmitted out of BLF's account on April 15, 2010). BA made no attempt to recall the wire prior to this attempt by BLF on April 19, 2010 and numerous calls to Heather Rielly, BLF's representative at Bank of America, were not returned until approximately 11:30 a.m. In essence, BA waited 5 days to notify BLF of the situation without attempting to rescind the wire itself.

12. Upon information and belief, the account of GSS was initially debited on 4/14/10 as there existed clear and available funds in its operating account that bore the exact same operating account on the counterfeit check. The check number cashed, however, was not in sequence with the checks that were clearing GSS' account (i.e. #15624 through #15709).

13. Subsequent to this call, Defendant BA immediately debited, or charged, the sum of $123,500.00 against BLF's IOLTA trust account leaving a negative balance of $94,536.42.

14. Following BLF's notification by BA of the counterfeit check, BLF immediately contacted GSS and spoke with three (3) different individuals, including Victoria Gale who is

the controller for GSS, and was advised that a) the company was personally aware of the fraud involving its account, b) that approximately 10 separate checks were presented for payment against the account prior to BLF's receipt of the 4/13/2010 Official Check, and that c) GSS requested that the account be closed due to the fraud but was denied the request by a BA representative named Larry Ellis. Larry Ellis, upon information and belief, is the BA's business representative and liason to GSS. Ms. Gale represented that BA made the business decision to monitor the account for fraudulent activity instead of taking the prudent action of closing the account. BLF has made several calls to Mr. Ellis' business and cellular phone yet curiously he has not returned any calls.

15.   As part of its own investigation, as BLF was not contacted by a BA representative until Wednesday, April 21, 2010 relative to the investigation of GSS' account, BLF demanded an Affidavit for Forged or Lost Check/Money order from the investigative representative at BA, Frank X. Kelaher.  As of Thursday, April 22, 2010, Mr. Kelaher indicated that BA had not even begun to investigate the fraud involving the account of GSS notwithstanding BLF's informing BA of the problems involving GSS's account.  Mr. Kelaher has not responded to any of the written requests of BLF relative to the fraud involved with GSS' account, and to this date, has not received any documentation concerning BA's internal investigation.  In fact, Mr. Kelaher notified BLF by e-mail dated Monday April 26, 2010 that BA would not "comply with [your] requests for additional information regarding other bank customers and internal processes".

1.     16. On April 28, 2010, BLF was notified by Kristen Mon Goy, the executive secretary to the President of CEO of Bank of America, that "the investigation has concluded and the bank has determined that the responsibility of the overdraft is that of BLF".   This call was in direct response to a call made by BLF to Ms. Digwood at BA – the individual

6

who supervises the Attorney Trust Account relationships between BA and the New Jersey Supreme Court of New Jersey/Office of Attorney Ethics.  Due to the actions of BA, and notwithstanding its knowledge of the fraud affecting the GSS' account, the BLF Trust Account is overdrawn effectively "freezing" the segregated sub-account money of third-party clients in contravention to FDIC regulation and accepted banking acumen.  BLF's clients cannot access its client funds which are being held in trust for various and unrelated legal matters.  In fact, a substantial part of the money held in the trust account is pursuant to a matter pending in the Superior Court of New Jersey, Essex County, Chancery Division, bearing the caption **In the Matter of Frank C. Sacco**, Docket No. CP-0107-2006.  Client money in this matter is being held in "trust" and segregated from other client money pending the remediation of environmentally contaminated property in Newark, New Jersey inherited by the client.  The firm currently has no access to this escrow.

17.  Plaintiff contends that BA should have noticed that the check drawn on the account was different from GSS' standard checks and contained security features inconsistent with those that appeared on checks used in GSS' normal course of business, and that the check contained a number in discord to the numerical order of GSS' checkbook.  Accordingly, pursuant to N.J.S.A. 12A:4-401, the checks were not "properly payable" and they should not have been honored by BA.  BA failed to exercise reasonable commercial standards in paying the check.  The signature on the check was unauthorized or was otherwise fraudulent warranting manual verification as the check was of a substantial sum and not in conformity with their regular checks.   BA and GSS exhibited negligence and gross negligence in handling this matter, and their failure to exercise ordinary care has, and continues to cause, BLF damages.  BA has particularly exhibited bad faith in the collection of this debt notwithstanding its negligence in a) honoring the check, and b) failing to close the account

of the Defendant, GSS.   BA recently, and on 7/13/2010, took an additional $970.25 from the Plaintiff's operating account without notice.

## CAUSES OF ACTION

## I. NEGLIGENCE

18.  Plaintiff reasserts and incorporates herein by reference all allegations contained in the prior paragraphs above as if set forth herein verbatim.

19.  Defendant BA's actions constitute negligence, that is, failing to do that which a person of ordinary prudence would have done under the same or similar set of circumstances, or doing that which a person of ordinary prudence would have done under the same or similar circumstances.  The bank failed to exercise ordinary care by, among other things, paying the check, and in failing to close the account of GSS prior to Plaintiff's receipt of a bogus check. The negligence of BA was a proximate cause of Plaintiff's actual damages of at least $123,500.00, exclusive of prejudgment and post-judgment interest, attorney's fees, and costs of suit.

20.  In addition, BA's actions constitute negligence vis-à-vis Plaintiff, in that BA owed a duty to Plaintiff, which duty is breached, said duty being owed as a ' result of the special relationship that existed between BA and the Plaintiff.   A special relationship existed between BA and the Plaintiff creating the duty that was breached by reason of, among other things, the contractual and legal relationship between the parties, and the fraud and/or misrepresentation of BA vis-à-vis Plaintiff.

21.  Defendant GSS' actions constitute negligence because, among other things, GSS failed to do that which a person of ordinary prudence would have done under the same or similar set of circumstances, or doing that which a person of ordinary prudence would have done under the same or similar circumstances.  GSS should have, at the very least, terminated its

8

account as it was aware of the fraud involving its account and should not have authorized the payment of a check clearly out of sequence and not resembling its operating checks.  The negligence of GSS was a proximate cause of Plaintiff's actual damages of at least $123,500.00, exclusive of prejudgment and post-judgment interest, attorney's fees, and costs of suit.

22.   Defendant Sumitomo Corporation of American's ("Sumitomo") actions constitute negligence because, among other things Sumitomo failed to do that which a person of ordinary prudence would have done under the same or similar set of circumstances, or doing that which a person of ordinary prudence would have done under the same or similar circumstances. Sumitomo should have, among other things, required that its subsidiary close its account.   Sumitomo should have been aware of the fraud involving its subsidiary's account and should not have allowed the authorization of a check clearly out of sequence and not resembling GSS' operating checks.  Sumitomo negligently supervised the account and bookkeeping of its subsidiary. The negligence of Sumitomo was a proximate cause of Plaintiff's actual damages of at least $123,500.00, exclusive of prejudgment and post-judgment interest, attorney's fees, and costs of suit.

## II.   NEGLIGENT MISREPRESENTATION

### As to Defendant, Bank of America

23.   Plaintiff reasserts and incorporates herein by reference all allegations contained in all paragraphs above as if set forth herein verbatim.

24.   Defendant BA has made false and misleading material representations upon which the Plaintiff relied upon to its detriment.   Defendant BA made these false and misleading representations knowing that they would be relied upon, justifiably, by BLF in transferring the funds from its IOLTA Trust Account.    Specifically, and among other things, BA

9

unconditionally represented and verified to BLF that the Official Check 017232 dated April 13, 2010 drawn from the account of GSS in the amount of $123,500.00 was paid.  These representations were false when they were made to BLF on 4/15/2010. The representations were material and as a direct or proximate cause of these negligent misrepresentations, Plaintiff has suffered actual damages of $123,500.00 exclusive of prejudgment and post-judgment interest, attorney's fees, and costs of suit.

## III. <u>VIOLATION OF CONSUMER FRAUD ACT</u>

25.  Plaintiff reasserts and incorporates hereby by reference all allegations contained in the above paragraphs as if set forth herein verbatim.

26.  BA sold banking services to Plaintiff.

27.  BA was obligated to perform, and subsequently did perform, banking services for Plaintiff.

28.  In its performance of banking services for Plaintiff relating to the check, BA committed unconscionable business practices relating both to said banking services and with respect to the check, which practices lacked good faith, honesty in fact, and the observance of fair dealing.

29.  Upon information and belief, in its performance of banking services for Plaintiff related to the check, BA knowingly concealed, suppressed and/or omitted from Plaintiff material facts relating both to said banking services and to the check, and with the intention that Plaintiff rely upon such concealment, suppression and/or omission of material facts.

30.  Among other things, BA's actions constitute consumer fraud and other fraud by failing to close the GSS account despite knowing of the ten prior counterfeit checks, and by advising the Plaintiff that the funds relative to Plaintiff's check were available when, in fact, they were not.

31.  Plaintiff was entitled to rely on the actions of BA, and on the written and oral advice, statements, and representations made (or omitted) by BA in the performance of banking services for Plaintiff.

32.   BA's wrongful conduct has proximately caused Plaintiff to suffer a substantial ascertainable loss of money, which is measurable and quantifiable.

33.  Among other things, in charging back to Plaintiff's IOLTA account the full amount of the check, BOA removed from Plaintiff's IOLTA account (and retained after removal) funds that were and are the property of other clients of the Plaintiff.  These funds were in clearly marked and segregated client sub-accounts.  Despite Plaintiff's demand for the return of the funds of these other clients and a reversal of the charges, to date no portion of these other funds have been returned by BA to Plaintiff's IOLTA account or to Plaintiff directly.

34.  By reason of the foregoing, BA's actions constitute a violation of the Consumer Fraud Act which entitles Plaintiff to cover compensatory and consequential damages, punitive damages, triple damages, attorneys' fees and expenses, pre and post judgment interest, costs of suit, and such other and further relief as the Court deems just and proper.

## IV.  NEGLIGENCE AS TO REGULATION CC

35.  Plaintiff reasserts and incorporates herein by reference all allegations contained in the above paragraphs as if set forth herein verbatim.

36.   The primary federal agency responsible for the oversight of BA is the Office of Comptroller of the Currency (the "OCC"), a bureau of the United States Department of the Treasury.

37.  As a national bank, BA is obligated to comply with the regulations and of the regulatory guidance of the OCC.

38.  On January 8, 2007 the OCC issued its Bulletin 2007-2 titled "Guidance to National Banks Concerning Schemes Involving Fraudulent Cashier's Checks" to all national banks (the OCC Bulletin").

39.  The OCC Bulletin recommended that all national banks take actions to address the risks to the bank and its customers posed by fraudulent check schemes.  These actions included:

- Having appropriate methods for identifying potentially suspicious items;

- Training or other steps to insure that relevant personnel are aware of the increasing incidents of fraudulent cashier's checks;

- Having deposit account agreements to mitigate the risks of fraudulent cashier's checks;

- The ability to clearly explain to customers the status of deposited items; and

- Methods of working cooperatively with customers that become victims of cashier's check fraud.

40.  In addition to the guidance contained in OCC Bulletin 2007-2, and on information and belief, BA has previously accepted for deposit counterfeit and fraudulent cashier and teller checks and was on actual and constructive notice that these counterfeit and fraudulent checks are a frequent occurrence in the banking industry including, but not limited to, those counterfeit checks originating from the GSS account.

41.  BA had a duty to train its employees and otherwise take reasonable steps to protect both itself and its customers from losses resulting from the deposit of counterfeit and fraudulent cashier and teller checks.

42.  Upon information and belief, BA failed to promptly and properly comply with the guidance provided by the OCC Bulletin and failed to adequately train its personnel and take the other steps required by the OCC Bulletin and those consistent with its prior experiences with counterfeit and fraudulent cashier and teller checks.

43.  Despite having a duty to do so, BA failed to exercise ordinary care when presented with Plaintiff's check and upon Plaintiff's specific affirmative request to have BA confirm the validity of the check and/or availability of funds, by among other things, failure to directly confirm the validity of the check and/or availability of funds.

44.  Despite having a duty to do so, Defendants failed to exercise ordinary care in evaluating the check, failing to recognize irregularities with the check, and failing to advise Plaintiff of such irregularities.

45.  Defendants affirmatively represented to the Plaintiff, among other things, that the funds relative to the check were available, and that Plaintiff had the right to rely on such representation.

46.  In reliance on a specific representation, among other representations of BA, that the funds relative to the check were available, Plaintiff wired the funds pursuant to instructions received from its client after having been affirmatively advised by BA, among other things, that the funds were available for wiring.

47.  Upon information and belief, the check is a counterfeit and a forgery, and therefore, the representations made by BA with respect to the check were false and misleading to the detriment of the Plaintiff.

48.  Plaintiff has suffered damages as a result of Defendants' false representations as set forth herein.

49.  By reason of the foregoing, Plaintiff seeks the recovery of compensatory damages, interest, costs of suit, reasonable attorneys' fees and expenses, and such other and further relief as the Court deems just and proper.

## V.   VIOLATION OF REGULATION CC

50.  Plaintiff reasserts and incorporates herein by reference all allegations contained in the above paragraphs as set forth herein verbatim.

51.  BA's actions as aforesaid constitute a violation of Regulation CC.

52.  In addition, upon information and belief, BA made final settlement of the check.  If, upon information and belief, BA made final settlement of the check, then the right of BA to charge back the amount of the check to Plaintiff's account terminated at the time of such final settlement.

53.  If the right of BA to charge back Plaintiff's account terminated upon final settlement of the check, then the charge back of Plaintiff's account by BA was improper and wrongful.

54.  BA's failure to notify Plaintiff that BA had exercised its right to delay availability of the funds represented by the check or that a hold had been placed on the check constitutes an additional violation of Regulation CC.

55.  Had BA notified Plaintiff that BA had exercised its right to delay availability of the funds represented by the check or that a hold had been placed on the check, Plaintiff would have delayed wiring any portion of the funds represented by the check until receiving confirmation that the check had finally cleared.

56.  Plaintiff has suffered damages as a result of the foregoing wrongful violations of Regulation CC by BA.

57.  By reason of the foregoing, Plaintiff demands judgment for compensatory damages, reasonable attorneys' fees and expenses, pre and post judgment interest, costs of suit, and such other and further relief as the Court deems just and proper.

## VI.  CONVERSION

58.  Plaintiff reasserts and incorporates herein by reference all allegations contained in the above paragraphs as if set forth herein verbatim.

59.  BA's actions as aforesaid including, but not limited to, charging back Plaintiff's account, creating an overdraft in Plaintiff's account, taking the segregated funds of other clients, and wrongfully retaining and refusing to return said monies to the Plaintiff constitutes conversion.  BA has further converted, without notice, funds in the amount of $970.25 from the Plaintiff's operating account in the interim.

60.  By reason of the foregoing, Plaintiff seeks the recovery of compensatory damages, pre and post judgment interest, reasonable attorneys' fees and expenses, costs of suit, and such other and further relief as the Court deems just and proper.

## VII.  BREACH OF CONTRACT

61.  Plaintiff reasserts and incorporates herein by reference all allegations contained in the above paragraphs as if set forth herein verbatim.

62.  A contractual relationship existed between BA and Plaintiff in that Plaintiff entered into contractual depository, initial account opening, and other agreements with BA in connection with Plaintiff's initial opening and subsequently maintaining Plaintiff's IOLTA account at BA.

63.  BA's actions as aforesaid constitute a breach of BA's contract with Plaintiff which breach has caused damage to the Plaintiff.

64.  By reason of BA's' breach of contract Plaintiff seeks compensatory and consequential damages, pre and post judgment interest, reasonable attorneys' fees and expenses, costs of suit, and such other and further relief as the Court deems just and proper.

## VIII.  BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING

65.  Plaintiff reasserts and incorporates herein by reference all allegations contained in the above paragraphs as if set forth herein verbatim.

66.  The law implies into every contract a covenant that both parties to the contract will act in good faith and will deal fairly with one another.

67.  BA's actions as aforesaid have deprived Plaintiff of the fruits and benefits of its contract with BA.

68.  BA's actions as aforesaid, and their having deprived Plaintiff of the fruits and benefits of Plaintiff's contract with BA, constitutes a breach of the implied covenant of good faith and fair dealing.

69.  By reason of the foregoing, Plaintiff demands judgment for compensatory and consequential damages, pre and post judgment interest, reasonable attorneys' fees and expenses, costs of suit, and such other and further relief as the Court deems just and proper.

## IX.  PUNITIVE DAMAGES

70.  Plaintiff reasserts and incorporates herein by reference all allegations contained in the paragraphs above as if set forth herein verbatim.

71.  Plaintiff seeks punitive damages against the Defendants for the harm that was suffered as the result of the Defendants' acts or omissions, and such acts were actuated by actual malice or accompanied by a wanton and willful disregard of BLF who foreseeably might be harmed by those acts or omissions.  Defendants have not responded to any of the many legitimate requests for documentation regarding the counterfeit check, and all calls have been effectively ignored to the material detriment of the Plaintiff and the material benefit of the Defendants.

72.  Defendants are profoundly aware of the serious harm arising from their conduct or omission, and were aware of the consequences and the likelihood of their reckless actions. Further, and upon learning of the counterfeit check, the Defendants have exhibited a callous and reckless disregard for the rights of the Plaintiff notwithstanding the fact that their actions have caused significant harm.  Defendants have continued with conduct of concealment and deception as of the date of this pleading.

73.  Plaintiff seeks punitive damages from the Defendants, jointly and severally, for the torts maliciously committed against the Plaintiff in the amount of $365,000.00.

## X.  INTERESTS AND COSTS

74.  Plaintiff reasserts and incorporates herein by reference all allegations contained in the paragraphs above as if set forth herein verbatim.

75.  Plaintiff BLF is entitled to recover prejudgment and post-judgment interest at the highest rates allowable at law, as well as attorney's fees and costs of court.  Further, Plaintiff continues to incur substantial expenses in the prosecution of its rights, and although the filing costs are minimal, more than $15,000.00 of billable hours that have been sacrificed in defense of the actions promulgated by the Defendants.

*WHEREFORE*, the Plaintiff demands

*a.*  A Judgment against Bank of America, NA, Global Stainless Supply, Inc., and the Sumitomo Corporation of America in the amounts described hereinabove, for Plaintiff's compensatory, consequential, and actual damages, plus punitive damages, plus treble damages under New Jersey's Consumer Fraud Act, plus interest, collection costs, costs of court, attorney's fees, and such other and further relief, both general and special, at law or in equity, to which it may justly be entitled,

17

b.  An Order immediately releasing the IOLTA Trust Account of Bergwall Law Firm, P.C., and/or any other assets of BLF, from the current state of overdraft so that innocent third-party sub-accounts may be accessed pursuant to the Rules of the Supreme Court and the OCC.

c.  An Order directing that the Defendant, Global Stainless Supply, Inc., produce the last six (6) months of statements involving their business account(s) bearing account number ████████████ and any and all information, memoranda, writings or reports, involving suspicious or inordinate activity involving their business account(s),

d.  An Order directing that the Defendant, Bank of America, NA, produce any and all internal documentation concerning its investigation of this matter, including but not limited to, FBI statements, memoranda, writings or reports, Affidavits of Forgery, SAR reports, or statements from employees of Global Stainless Supply, Inc., as well as the names, phone numbers and locations of the individuals at Bank of America, NA responsible for charging the BLF IOLTA Trust Account the counterfeit sum that created the overdraft,

e.  An Order which provides a general and specific Release to the Plaintiff relative to its actions in depositing a counterfeit check whose delivery and cashing by the Defendants was through their sole, exclusive, and joint negligence, and

f.  For such other and further relief as this Court deems reasonable and just.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.

## DESIGNATION OF TRIAL COUNSEL

Pursuant to Rule 4:25-4, Thomas Bergwall, Esq., is hereby designated trial counsel in the within matter.

Respectfully submitted,

**BERGWALL LAW FIRM, P.C.**
165 Passaic Avenue
Fairfield, New Jersey 07004
*Lead Counsel, and Attorneys for the Plaintiff*
Phone: (973) 276-6100
Fax:    (973) 276-6169
Email:  Bergwalllaw@aol.com

BY: _____
Thomas Bergwall, Esq.

Dated:  July 19, 2010

**SEIDMAN & PINCUS, LLC**
777 Terrace Avenue, Fifth Floor
Hasbrouck Heights, NJ 07604
Co-counsel for Plaintiff
Phone:  (201) 473-0047
Fax:    (201) 288-7009

C:\Documents and Settings\Tom Bergwall\My Documents\OTSC B OF A\OTSC 7-19.doc

## VERIFICATION

I, Thomas P. Bergwall, Esq., verify the following under the penalties of perjury and the laws of the State of New Jersey.  I have read the foregoing Verified Complaint and the facts contained therein are true and correct to the best of my knowledge.

Dated: July 19, 2010

_____
Thomas P. Bergwall, Esq.

## RULE 4:5-1 CERTIFICATION

I hereby certify that the matter in controversy is not the subject of any other action pending in any Court proceeding or of a pending arbitration proceeding and to the best of my knowledge and belief, no other parties need be joined at this time, and that no other proceedings are contemplated.  Plaintiff reserves the right to modify this certification should now or additional information come to my attention.

BERGWALL LAW FIRM, P.C.
Lead Counsel for Plaintiff

BY: _____
Thomas Bergwall, Esq.

Dated:  July 19, 2010

**BERGWALL LAW FIRM, P.C.**
165 Passaic Avenue
Fairfield, New Jersey 07004
Attorneys for the Plaintiff
Phone: (973) 276-6100
Fax:     (973) 276-6169
Email:  tb@bergwalllaw.com

SUPERIOR COURT OF NJ
CIVIL DIVISION
ESSEX VICINAGE

2010 JUL 21  A II: 02

FINANCE DIVISION
RECEIVED/FILED
27

| | |
|---|---|
| BERGWALL LAW FIRM, P.C.,<br><br>                                    Plaintiff,<br><br>vs.<br><br>BANK OF AMERICA, N.A., GLOBAL STAINLESS SUPPLY, INC., SUMITOMO CORPORATION OF AMERICA,<br><br>                                    Defendants. | SUPERIOR COURT OF NEW JERSEY<br>LAW DIVISION:ESSEX COUNTY<br><br>DOCKET NO.<br><br><br>*CIVIL ACTION*<br><br>**CERTIFICATION OF THOMAS P. BERGWALL, ESQ. IN SUPPORT OF OTSC SEEKING INJUNCTIVE RELIEF** |

I, Thomas P. Bergwall, Esq., certify the following to be true:

## OVERVIEW

1.    I am an attorney licensed in the States of New Jersey and New York.  I have been a Member in Good Standing of the New Jersey Bar and New York Bar since 1989.  I make this Certification with full knowledge of the matters set forth herein.

2.    I am the sole shareholder of the Plaintiff and the individual involved in this matter.  Accordingly, I am fully familiar with the matters set forth herein from my own personal knowledge and from documents and records contained in Plaintiff's file concerning this matter.

3.    This is an action brought by a law firm (the "Plaintiff") against the bank where it maintains its IOLTA trust account.  In the course of performing collection work for a client the Plaintiff collected a check for the client, and deposited that check into its IOLTA account to make the check/funds available for disbursement in accord with instructions

1

received from its client.  The check in question was drawn from an account from the same bank that that the Plaintiff maintains its IOLTA account.  The bank subsequently advised Plaintiff that the funds were available, at which time Plaintiff wired the money from its IOLTA account in accordance with instructions received from its client.  Thereafter the bank changed its advices, instead advising the Plaintiff that the check which had been deposited was counterfeit, that the funds were not available, at which time the bank charged back and froze Plaintiff's IOLTA account thereby both (i) creating an overdraft in the account, and (ii) preventing Plaintiff from accessing the IOLTA account to withdraw therefrom other funds belonging to other clients of the firm that were clearly segregated in separate and distinct sub-accounts.

4.      After being notified that the check was a counterfeit, Plaintiff immediately began investigating the matter.  As a result of its investigation Plaintiff has learned that the account on which the account was drawn had previously experienced similar counterfeit checks being drawn on it, that the customer on that other account had requested that the bank close the account because of the customer's experience with the prior presentment of counterfeit checks, but that the bank failed and refused to close said account despite being requested by the customer to do so.

5.      Based upon these events Plaintiff asserts the claims set forth in this Verified Complaint against the bank.  Plaintiff seeks the ultimate relief set forth in each of the counts of this Verified Complaint herein.  In addition, Plaintiff seeks the entry of an Order To Show Cause, without temporary restraints, requiring the Defendants to show cause, on a date to be set by the Court, why the following preliminary injunctive relief should not be awarded to the Plaintiff herein:

C:\Documents and Settings\Tom Bergwall\My Documents\OTSC B OF A\OTSC CERTIFICATION 7-19-10.doc

- An Order directing and requiring the bank to unfreeze Plaintiff's IOLTA account in order to allow Plaintiff to access the funds of other clients of the firm;

- In connection with the unfreezing of the IOLTA account, an Order directing and requiring the bank to credit the IOLTA account so as to, inter alia, deposit back into the account the check amount in question as opposed to leaving the account in an overdrawn/negative balance state; and

- An Order awarding Plaintiff certain limited expedited discovery, directing and requiring the Defendants to produce certain documents that Plaintiff needs immediately relative to this matter. The limited immediate documents sought are set forth in the proposed form of Order to Show Cause submitted herewith.

## FACTS

6.     My firm was retained on or about March 29, 2010 by a Japanese firm, Nagano Japan Radio Company Ltd. ("Nagano") to pursue the balance of a debt due and owing to Nagano from one of its customers located in the United States.   I agreed to represent Nagano on a contingency basis of 15% of the amount collected.  The amount outstanding to Nagano was six-hundred and fifty-four thousand ($654,000.00) dollars.

7.     On April 14, 2010, I received a Bank of America (hereinafter the "bank or Bank of America") official check number 017232 dated April 13, 2010 and drawn from Global Stainless Supply, Inc.'s (hereinafter "Global or Global Stainless Supply, Inc.") account. (A copy of the check is attached hereto as **EXHIBIT "A"**)  On April 14, 2010, I deposited this check into my firm's IOLTA Trust Account and within the fiduciary sub-account entitled "Nagano – 08418".    All funds in the Plaintiff's IOLTA account are segregated from the funds of other clients of the firm and properly notated as such pursuant to the requirements of the New Jersey State Bar and of the New Jersey Supreme Court, specifically, Rule 1:28A.

3

8.    On Thursday, April 15, 2010, I personally wired the net funds in the amount of one-hundred four thousand nine-hundred and seventy-five ($104,975.00) dollars to Nagano through an HSBC account located in New York City.   In order for me to be able to wire transmit the funds, I first was required to contact the bank's wire room and follow protocol relative to the wiring of the funds.  As part of this protocol I specifically asked, and was told by the bank, that the funds were available to be wired.  Consistent with this I later learned (see the further details about my post transaction investigation below) that the subject funds had actually left the account of Global Stainless Supply, Inc. and been deposited into my firm's IOLTA account.

9.    Following the wiring of the funds, and as part of the bank's protocol, the firm is required to "call back" or to verify the wire transaction following the initial call directing the payment of the wire to the specific wiring destination.   I have followed this same process for the last 15 years or so without incident.  I conducted the "call back" verification.

10.    The money left my trust account on Thursday, April 15, 2010.

11.    On Monday, April 19, 2010, I was notified that the check deposited was "counterfeit".  Stunned, I immediately attempted to rescind the wire and was provided the reference number of 4211-19APRIL19.   The bank made no attempt to rescind the wire notwithstanding the fact that the amount wired was actually credited back to the account of Global on Thursday, April 15, 2010.

12.    I know that the funds left Global's account and were cleared and made available in my account.  Bank of America would not have allowed me to wire the funds if the funds had not cleared in my account. I further have proof that the funds left the account of Global Stainless Supply, Inc.  A copy of the 4/30/09 operating account statement for

4

Global Stainless Supply, Inc. is attached hereto as **EXHIBIT "B"** showing the funds left Global's account and electronically deposited in my account.  I had no idea that the check was counterfeit otherwise I would not have deposited the check.  In fact, I received a second check which I did not deposit from the same account and the same company in the amount of $235,300.00 which **is** in sequential order with the rest of the checks clearing the account of Global Stainless Supply, Inc. (A copy of the $225,300.00 check dated 4/16/2010 bearing check no. 15234 is attached hereto as **EXHIBIT "C"**).  The check in the amount of $123,500.00 was, upon information and belief, not in sequential order with the other checks clearing Global's account at the time of this transaction.

13.     The check did clear the account of Global Stainless Supply, Inc. as there was sufficient funds in its account.  The funds were clear and available to the Plaintiff.

14.     Bank of America immediately debited, or charged, the sum of $123,500.00 against my IOLTA trust account leaving a negative balance of $94,536.42.  This amount was recently reduced as Bank of America usurped all the remaining funds in my operating account held at Bank of America.  I have been unable to access the money of my firm's law clients since April 19, 2010 as the account is overdrawn.  Deposits for home purchases, escrows for environmental clean-ups, and other types of deposits are not accessible.   (A copy of the overdraft notice is attached hereto as **EXHIBIT "D"**)  In fact, a substantial part of the money held in the trust account is pursuant to a matter pending in the Superior Court of New Jersey, Essex County, Chancery Division, bearing the caption **In the Matter of Frank C. Sacco**, Docket No. CP-0107-2006.  Client money in this matter is being held in "trust" and segregated from other client money pending the remediation of environmentally contaminated property in Newark, New Jersey inherited by the client.  The firm currently has no access to this escrow.

5

15.    I immediately attempted to assist in any endeavor that would rectify the situation.   Bank of America immediately assumed an adversarial position and failed to respond to my legitimate and reasonable inquiries relative to the counterfeit check.  Bank of America has refused to provide any of the requested information.  As such, I need limited expedited discovery herein, so that I will be in a position to present complete and proper proofs to the Court at the return date of the requested Order to Show Cause, so that the Court will have a completed record on which it can base its ruling.

16.    Regarding Bank of America's refusal to provide the requested information, I found their positioning to be curious in light of the fact that I have banked with Bank of America and its predecessors for over 20 years.   Although Bank of America *immediately* charged my account, its representatives (Ira Cohen and Heather Rielly) conceded to me that they had not seen a copy of the counterfeit check prior to crediting the amounts back to Global Stainless Supply, Inc. and debiting my account.  How did they determine that the check was counterfeit before even seeing the check?  Did they know something that I did not concerning the origination of the check?  My questioning lead to more and more silence, and it became clear to me that the bank was simply trying to protect its interests and "cover its tracks" relative to the cashing of the check.

17.    When I was contacted by Frank X. Kelaher, the bank's investigator, more than three (3) days following my notification of the issue regarding the check, I was dumbfounded when he indicated to me that he was unaware of the situation involving Global's account and the fraudulent checks previously presented.  I told him that we had contacted Global Stainless Supply, Inc. and was told that its account had been experiencing some irregularities and multiple checks had been presented against the account which were fraudulent.  Victoria Gale, the controller at Global Stainless Supply, Inc., indicated that they

6

had wanted to close the account but were advised against it by a Bank of America employee, Larry Ellis. I do not know why Bank of America refused to shut down the account. I need limited expedited discovery on this issue. (*See* attached Houston Police Department Report dated 3/17/10 verifying Ms. Gale's indication that fraud had been perpetrated against the Global account prior to my firms' receipt of the check, attached hereto as **EXHIBIT "E"**).

18.      After being advised by Ms. Gale that that Bank of America had assumed the responsibility of "monitoring" the account for fraud and the presentment of checks that may be counterfeit, it became clear to me that Bank of America simply let this check clear through its mistake and/or oversight.   The bank could not charge the client because it was a fraudulent check and its signature was not authorized, and it was not going to take the loss as a result of its own negligence in monitoring the account, so the bank charged by trust account.  This option was the easiest for the bank to elect and least detrimental to itself and to its client, Global.

19.      After making many calls to various individuals within the bank regarding many different issues, including the possibility that the wire had been returned and the conclusions reached relative to its "internal" investigation, I was told quite curtly that I could only correspond with one individual, Kristen Mon Goy, who is the AVP/Customer Advocate within the Office of the CEO and President of Bank of America. What I believe to be a cover-up was officially on. I received a letter dated May 3, 2010 from Ms. Mon Goy which does not even mention or reference the fact that Bank of America was aware of the fraud involving its client's account and that it failed to close the account.   The bank has never presented to me an Affidavit of Forgery indicating the circumstances of the check or any other fraudulent checks presented against Global's account. I feel that it was absolutely material that I be advised by Bank of America during this process that it had been uniquely

7

aware that its client, Global, had suffered from this situation prior to my receipt of the check. Ms. Mon Goy, apparently, did not. I, therefore, never received 1 piece of paper from Bank of America concerning an investigation of the fraud. I never received one call asking for a copy of the 2nd check, or a copy of the overnight package that I still have in my possession. What was the purpose of Bank of America conducting an investigation of its own apparent negligence? (A copy of e-mails from Frank Kellaher, the Bank of America corporate security officer, dated 4/26/10 and 5/3/10 attached hereto as **EXHIBIT "F"**) I e-mailed the Vice President of Bank of America's Global Corporate Security, Investigative Services – Dallas, Mr. James D. Grace, on June 9, 2010 asking whether or not Bank of America had notified the FDIC of the counterfeit checks, as is customary, and he did not respond. (A copy of my request dated 6/9/10 and response dated 6/9/10 is attached hereto as **EXHIBIT "G"**)

20. I have written to the New Jersey Bar, notified the Fairfield Police Department, filed a claim with the Office of the Comptroller of the Currency (OCC), the agency that regulates national banks, and have notified the FDIC. I further notified the Texas Attorney General's Office. I received the Houston Police Department report following my inquiry to them.

21. It is not acceptable that Bank of America overdraft my trust account with a counterfeit check which should never been honored. Bank of America has all the systems in place, or should, to identify a check in a substantial denomination that is counterfeit or may not be in sequence or does not have an authorized signature. I further believe that it is unacceptable that Bank of America sends to me dunning letters indicating that I owe the bank over ninety-five thousand five-hundred thirty-six and 42/100 ($95,536.42) dollars. It is inconceivable that the bank would further take over $900.00 from the firm's former

8

operating account in order to offset the bank's "loss". If Bank of America and Global Stainless Steel, Inc. had simply closed the account, which was the prudent and reasonable task to undertake, I would not have been a victim of this fraud. Hypothetically, would I be indebted to Bank of America for $225,300.00 if I had deposited the 2nd check that was in sequential order with Global Stainless Steel's account? I know what Ms. Mon Goy's response would be and that response would be reprehensible.

22. Bank of America's employees missed the unauthorized signature on the check. Under applicable law, therefore, the check was not properly payable. Processors in banks are held to a higher standard in reviewing checks and their authenticity than the public-at-large. See, e.g., New Jersey Steel v. Warburton, 655 A.2d 1382, 1388 (N.J. 1995). Further, this transaction was within the same bank and the account should have been properly notated relative to the presentment of further fraudulent checks. It appears under applicable law that Bank of America is also liable to Global Stainless Supply, Inc. for its failure to catch the forged maker signatures under both N.J.S.A. 12A:3-406 and 4-406.

23. While Global's account remains open, there remains the chance that other individuals across the country may deposit checks without being aware they are fraudulent. Will Bank of America charge those check amounts to the unknowing depositor? If the account had been closed, and a new account number assigned, *I would not have had the ability* to deposit the check and would not have been debited the amount fraudulently by Bank of America.

24. I currently cannot access my clients' segregated funds that were deposited in separate sub-accounts within my trust account prior to the charge back by Bank of America. My client's funds, therefore, are not available for the transactions in which they delegated the money to my firm and to my fiduciary account. Several checks have bounced due to

9

insufficient funds. (A copy of dishonor notices from Metro Title Agency, Inc. is attached hereto as **EXHIBIT "H"**).

25.     I am currently unable to access any funds from this trust account and I am faced with irreparable harm to my business and my reputation as a result of the actions of the Defendants.  I have responsibility for my employees and their families and these are very difficult times economically.

26.     I have spent over eight (80) hours dealing with this matter, contacting and arguing with Bank of America, arguing and defining my case with my insurance carrier, reporting facts to various police and supervisory agencies, dealing with the New Jersey Bar and the IOLTA fund, and discussing, drafting, and reviewing these documents.  I have been forced to commit an oppressive amount of hours to a matter that would have been obviated but for the Defendants' collective negligence and utter disregard of accepted business and banking protocol.

27.     I certify that the foregoing statements made by me are true.  I am aware that if any of the foregoing statements are willfully false, I am subject to punishment.

Dated:   July 19, 2010

_____
Thomas P. Bergwall, Esq.

10

**BERGWALL LAW FIRM, P.C.**
165 Passaic Avenue
Fairfield, New Jersey 07004
Attorneys for the Plaintiff
Phone: (973) 276-6100
Fax:    (973) 276-6169
Email: tb@bergwalllaw.com

SUPERIOR COURT OF NJ
CIVIL DIVISION
ESSEX VICINAGE

2010 JUL 21  A 11: 42

FINANCE DIVISION
RECEIVED/FILED
27

|  |  |
|---|---|
| BERGWALL LAW FIRM, P.C., | SUPERIOR COURT OF NEW JERSEY |
| Plaintiff, | LAW DIVISION: ESSEX COUNTY |
| vs. | DOCKET NO. |
| BANK OF AMERICA, N.A., GLOBAL STAINLESS SUPPLY, INC., SUMITOMO CORPORATION OF AMERICA, | *CIVIL ACTION* |
| Defendants. | **CERTIFICATION OF NOTICE TO ADVERSARIES** |

I, Thomas P. Bergwall, Esq., certify the following to be true:

1.     I am an attorney licensed in the States of New Jersey and New York.  I make this Certification with full knowledge of the matters set forth herein.

2.     On July 20, 2010 I notified the referenced defendants via electronic mail and phone call that this office would be presenting this Order To Show Cause, with supporting papers, to the Superior Court of New Jersey, Law Division, Essex County.

3.     I certify that the foregoing statements made by me are true.  I am aware that if any of the foregoing statements are willfully false, I am subject to punishment.

Dated:   July 20, 2010

_____
Thomas P. Bergwall, Esq.

BERGWALL LAW FIRM, P.C.,

                              Plaintiff,

vs.

BANK OF AMERICA, N.A., GLOBAL
STAINLESS SUPPLY, INC., SUMITOMO
CORPORATION OF AMERICA,

                              Defendants.

SUPERIOR COURT OF NEW JERSEY
LAW DIVISION: ESSEX COUNTY

DOCKET NO.

*CIVIL ACTION*

---

### PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF ITS ORDER TO SHOW CAUSE APPLICATION SEEKING PRELIMINARY INJUCTIVE RELIEF

---

**BERGWALL LAW FIRM, P.C.**
165 Passaic Avenue
Suite 304
Fairfield, NJ 07004
Phone: (973) 276-6100
Fax:    (973) 276-6169
*Lead Counsel for Plaintiff*

**SEIDMAN & PINCUS, LLC**
777 Terrace Avenue, 5th Floor
Hasbrouck Heights, NJ 07604
Phone: (201) 473-0047
Fax:    (201) 288-7009
*Co-Counsel for Plaintiff*

Of Counsel:

    Thomas Bergwall, Esq.

On the brief:

    Thomas Bergwall, Esq.
    Mitchell B. Seidman, Esq.

# TABLE OF CONTENTS


| | PAGE |
|---|---|
| PRELIMINARY STATEMENT ...................................... | 1 |
| STATEMENT OF FACTS ........................................... | 2 |
| LEGAL ARGUMENT ................................................ | 3 |
| PLAINTIFF IS ENTITLED TO PRELIMINARY INJUNCTIVE RELIEF ........................................ | 3 |
| (A) THE LAW RELATIVE TO PLAINTIFF'S CLAIM IS WELL SETTLED AND PLAINTIFF CAN SHOW PROBABLE SUCCESS ON THE MERITS ...................... | 4 |
| (B) PLAINTIFF IS SUFFERING IMMEDIATE AND IRREPARABLE HARM RESULTING FROM BANK OF AMERICA'S FREEZE AND CHARGE BACK OF ITS IOLTA ACCOUNT ............................................... | 12 |
| (C) A BALANCING OF THE HARDSHIPS WEIGHS IN FAVOR OF THE PLAINTIFF ................................... | 14 |
| (D) THE PUBLIC INTEREST WEIGHS IN FAVOR OF GRANTING PLAINTIFF PRELIMINARY INJUNCTIVE RELIEF ........................................................ | 15 |
| CONCLUSION ........................................................ | 17 |

## PRELIMINARY STATEMENT

Plaintiff Bergwall Law Firm, P.C. ("Plaintiff") submits this Brief in support of its Order to Show Cause application seeking preliminary injunctive relief.  As is more fully detailed in Plaintiff's Verified Complaint and the moving Certification of Thomas Bergwall, Esq., the Defendant Bank of America, N.A. ("Bank of America or bank") has frozen the separate segregated sub-accounts within the trust account of Plaintiff, a law firm, in which sub-accounts Plaintiff is holding funds of "other" clients of the firm, i.e. "other" clients meaning clients other than the one involved with the counterfeit check which is the subject of this case.  Bank of America's freezing of the separate, segregated sub-accounts containing trust funds of other clients is injuring Plaintiff's business and reputation.  As is more fully detailed below, such injury to business and reputation is recognized as "irreparable injury" for purpose of assessing whether a plaintiff is entitled to preliminary injunctive relief.  Because of this injury to business, reputation and livelihood, which is an irreparable injury, Plaintiff seeks the following preliminary injunctive relief herein:

- An Order directing and requiring Bank of America to unfreeze Plaintiff's IOLTA account in order to allow Plaintiff to access the funds of other clients of the firm;

- In connection with the unfreezing of the IOLTA account, an Order directing and requiring Bank of America to credit the IOLTA account so as to, inter alia, deposit back into the account any other funds of other clients whose monies were/are in the IOLTA account, as opposed to leaving the account in an overdrawn/negative balance state; and

- An Order awarding Plaintiff certain limited expedited discovery, so that Plaintiff can obtain certain limited necessary information (documents) relative to this matter.

In addition, preliminary injunctive relief should also be awarded to the Plaintiff because (i) it is likely that Plaintiff will ultimately succeed on the merits of its claims herein, (ii) a balancing of the hardships weighs in favor of the Plaintiff, and (iii) the public interest weighs in favor of granting

1

C:\Documents and Settings\Tom Bergwall\My Documents\OTSCBRIEF 7-19-10.doc

injunctive relief.  Accordingly, preliminary injunctive relief should be awarded to the Plaintiff herein. Plaintiff's Order to Show Cause application should in all respects be granted.

## STATEMENT OF FACTS

For a complete statement of the facts relative to Plaintiff's Order To Show Cause application the Court is respectfully referred to Plaintiff's Verified Complaint and the moving Certification of Thomas Bergwall, Esq.

2

## LEGAL ARGUMENT

## PLAINTIFF IS ENTITLED TO PRELIMINARY INJUNCTIVE RELIEF

An injunction is an Order issued by a Court compelling a party to a litigation to perform a certain act or not to perform a certain act. The usual form of injunction is known as a preventive injunction, and prohibits a party from doing a particular act, or commands him to refrain from doing it. If justice requires, the Courts may grant a mandatory injunction, which is one that (1) commands the defendant to do some positive act or particular thing; (2) prohibits him from refusing (or persisting in a refusal) to do or permit some act to which the plaintiff has a legal right; or (3) restrains the defendant from permitting his previous wrongful act to continue operative, thus virtually compelling him to undo his past act. Black's Law Dictionary; Bailey v. Schnitzus, 45 N.J. Eq. (1888).

New Jersey courts typically weigh four factors in determining whether to grant a preliminary injunction: "(A) the likelihood that the applicant will prevail on the merits at the final hearing; (B) the extent to which the plaintiffs are being irreparably harmed by the conduct complained of; (C) whether a balancing of the hardships weighs in favor of the plaintiff or the defendant; and (D) the public interest." Opticians Ass'n. of America v. Independent Opticians of America, 920 F.2nd 187, 191-192 (3rd Cir. 1990); Pappan Enterprises, Inc. v. Hardees Food Systems, Inc., 143 F.3d 800, 803 (3rd Cir. 1998); One World Botanicals Ltd. v. Gulf Coast Nutritionals, Inc., 987 F. Supp. 317, 330 (D.N.J. 1997). Under New Jersey law the factors to be considered on an application for injunctive relief were settled in the seminal case of Crowe v. DeGioia, 90 N.J. 126, 132-135 (1982). There, the Supreme Court of New Jersey identified the following requirements:

3

1. A preliminary injunction should not issue except when necessary to prevent irreparable harm. Irreparable harm is generally considered to be harm which is not capable of being fully remedied by an award of money damages. If money damages can make the plaintiff whole, then the Courts will force the plaintiff to await final relief at a trial, and will rely upon the trial judge and/or jury to grant a full measure of relief in the form of money damages.

2. A preliminary injunction is generally withheld when the legal right underlying the plaintiff's claim is unsettled. Thus, plaintiff must have a settled legal basis for the ultimate relief which the plaintiff claims in order to be entitled to a preliminary injunction. One exception to this rule applies when the injunction which the plaintiff seeks goes no further than to preserve the status quo ante, or in layman's terms, preserves the status of the parties which existed immediately prior to the allegedly wrongful conduct of the defendant.

3. Preliminary injunctive relief will not issue when the material facts essential to the plaintiff's claim are denied by the defendant under oath. Thus, if the defendant files affidavits in opposition to an application for preliminary injunction which disputes all of the material facts essential to the plaintiff's case, the Court must either deny the preliminary injunction, or proceed to an immediate hearing with respect to the disputed issues before entering an injunction. Again, however, there is an exception to this rule that, ". . . mere doubt as to the validity of the claim is not an adequate basis for refusing to maintain the status quo." Crowe v. DiGioia, supra at 133.

An application of these factors to the case at bar clearly reveals that Plaintiff's present request for preliminary injunctive relief should in all respects be granted. As will be demonstrated in subsections (A), (B), (C), and (D) below, there is a likelihood that Plaintiff will ultimately succeed on the merits of this case, Plaintiff is suffering irreparable injury, a balancing of the hardships weighs in Plaintiff's favor, and the public interest weights in favor of granting Plaintiff injunctive relief. Accordingly, Plaintiff should be awarded preliminary injunctive relief herein.

### (A) THE LAW RELATIVE TO PLAINTIFF'S CLAIM IS WELL SETTLED AND PLAINTIFF CAN SHOW PROBABLE SUCCESS ON THE MERITS

The first factor to be considered in determining whether to award a plaintiff injunctive relief is whether the law relative to Plaintiff's claim is well settled, and whether it is likely that Plaintiff will ultimately succeed on the merits of its claims. This factor is, however, tempered by the principle

4

that mere doubt as to the validity of plaintiff's claim is not an adequate basis for denying the requested injunctive relief. Crowe, supra, at p. 177.

In this case the law relative to Plaintiff's claims is settled, and it is likely that Plaintiff will ultimately succeed on its claims. Specifically, the law is clear that a bank owes a common law duty of care to its customer and that, as such, a bank can be liable to its customer for acting negligently in handling its accounts and checks. In addition when a plaintiff is a holder in due course of a check which it deposits, said plaintiff is likely to succeed in its capacity as a holder in due course. As is detailed below, based on Plaintiff's "negligence" and "holder in due course" claims herein, it is likely that Plaintiff will ultimately succeed on the merits of this case.

Regarding negligence, the law is well settled that a bank, such as Bank of America, owes a common law duty of care to its customer (i.e. outside of its duties under the Uniform Commercial Code – "UCC"). In order for the customer to recover on a common law negligence claim against its bank the customer must establish a "special relationship" between the bank and itself, such as a "fiduciary, confidential, contractual or legal [relationship] or where there was fraud or misrepresentation on [the] part of [the] defendant bank". City Check Cashing, Inc. v. Manufacturers Hanover Trust Co., 166 N.J. 49, 59-60 (2001). See also Burke v. First Peoples Bank of New Jersey, 172 N.J. Super. 539 (Cumb. Cty. Dist. CT. 1980) (claims of negligent misrepresentation regarding misrepresentations made by a bank to its customer regarding a check handled by the bank are cognizable and not precluded by the UCC).

In the case at bar there was both the presence of a contractual relationship between the bank and the Plaintiff and misrepresentations made as within the meaning of City Check Cashing. Here,

the funds were being drawn on the account of Global Stainless Supply, Inc. ("GSS or Global") at Bank of America.  As such, Bank of America acted as both the payoff bank and the depositary bank. It knew (or should have known) the status of GSS' account.  Bank of America saw that there were good and cleared funds in the GSS account with which to pay the check Plaintiff was depositing, and Bank of America subsequently withdrew the funds from GSS' account, deposited them into Plaintiff's account, advised the Plaintiff that the funds were available to be wired.  Pursuant to these advices, Plaintiff followed the bank's internal protocol and subsequently wired the subject funds. Thereafter, Bank of America reversed its advices to Plaintiff, advised that the check was counterfeit, at which time it improperly reversed the entire transaction, both freezing and charging back Plaintiff's account as well as the GSS account.  Farcically, on the actual date that the Plaintiff wired the funds from its account,  Bank of America credited the funds to GSS' account.

Moreover, Bank of America carried out the foregoing knowing, and without telling Plaintiff, that there was pre-existing counterfeit check problems affecting this specific GSS account. Notwithstanding this indisputable fact – the Houston Police Department evidences this fact, Bank of America failed to place a fraud notation place on the account until April 21, 2010, or a full week after the Plaintiff received the first of two counterfeit checks. Based upon information and belief, there were ten prior incidents of counterfeit checks presented against the GSS account, and GSS had previously requested that the account be closed, all of which information Bank of America knew but withheld from Plaintiff, instead moving the funds from GSS' account to Plaintiff's account and telling Plaintiff the funds were available for wiring.  GSS had actually reported the fraud affecting its account to the Houston, Texas Police Department.  Bank of America failed and/or refused to close the GSS account at GSS' prior request.  Had Bank of America closed the subject GSS account, or

6

disclosed to Plaintiff the prior problems with this account, then Plaintiff never would have suffered the losses sustained herein.  Bank of America never disclosed, and still has not admitted, to the Plaintiff that the GSS account had been fraught with bogus checks during its "investigation" of the matter.  Plaintiff was forced to unearth this fact through its own investigation by way of the Fairfield, New Jersey Police Department.

Clearly, based upon the foregoing facts, it is likely that Plaintiff will ultimately succeed on the merits of its negligence claims against Bank of America.  At the very least, considering the irreparable injury, balancing of hardships, and public interest factors, this Court should award Plaintiff the requested injunctive relief (simply undoing the freeze and charge back of Plaintiff's IOLTA account for now, so that Plaintiff can access the funds of its other clients).  If appropriate, Bank of America can pursue any claims it believes it has against the Plaintiff for money damages in a collection matter.

Regarding Plaintiff's claims and status as a holder in due course, and the likelihood that Plaintiff will succeed on this statutory set of claims, N.J.S.A. 12A:3-301 sets forth the rights of a holder in due course.  Specifically, Section 3-302 establishes that a person is a holder in due course if:

> (1) the instrument when issued or negotiated to the holder does not bear such apparent evidence of forgery or alteration or is not otherwise so irregular or incomplete as to call into question its authenticity; and

> (2) the holder took the instrument for value, in good faith, without notice that the instrument is overdue or has been dishonored or that there is an uncured default with respect to payment of another instrument issued as part of the same series, without notice that the instrument contains an unauthorized signature or has been altered, without notice of any claim to the instrument described in 12A:3-306, and without notice that any party has a defense or claim in recoupment described in subsection a. of 12A:3-305.

7

A holder in due course is "one who takes an instrument for value, in good faith, and without notice of dishonor or any defense against or claim to it on the part of any person." Triffin v. Quality Urban House Partners, 352 N.J. Super. 538, 541 (App. Div. 2002).    In order to preclude liability from a holder in due course under section 3-302, it must be apparent on the face of the instrument that it is fraudulent.   Id.

In the matter at bar, Plaintiff is not a check cashing establishment, nor a bank, and had no knowledge that the check was fraudulent.   Furthermore, Bank of America acted as both the payor bank and the depositary bank.   When a bank acts as both the payor bank and the depositary bank, it has two opportunities to catch the fraud perpetrated.   See NJ Steel Corporation, etal. v. Rupert Walburton, etals, 139 N.J. 536 (1995).   As the bank assumed dual roles of responsibility, it has a duty to examine the check and to determinate whether the check is "properly payable".    A bank "has a duty to determine the identity of the payee" of its depositor's checks.   Nutt v. Chemical Bank, 231 N.J. Super. 57, 61 (App. Div. l989).

Articles 3 and 4 of the UCC set forth the rights, duties and liabilities of banks and customers concerning commercial paper.   Kraftsman Container Corp. v. United Counties Trust Co., 169 N.J. Super. 488, 492 (Law Div. 1979).   Effective June 1, 1995, the UCC established a comparative negligence test in which losses are allocated between the customer and the bank if each has failed to comply with its respective duties. N.J.S.A. 12A:3-406 provides:

a. A person whose failure to exercise ordinary care substantially contributes to an alteration of an instrument or to the making of a forged signature on an instrument is precluded from asserting

8

the alteration or the forgery against a person who, in good faith, pays the instrument or takes it for value or for collection.

 b. Under subsection a. of this section, if the person asserting the preclusion fails to exercise ordinary care in paying or taking the instrument and that failure substantially contributes to loss, the loss is allocated between the person precluded and the person asserting the preclusion according to the extent to which the failure of each to exercise ordinary care contributed to the loss.

 c. Under subsection a. of this section, the burden of proving failure to exercise ordinary care is on the person asserting the preclusion. Under subsection b. of this section, the burden of proving failure to exercise ordinary care is on the person precluded.

[N.J.S.A. 12A:3-406]   *See* 2 White & Summers, supra, § 19-3 at 240 (discussing section 3 406).

 A bank's lack of ordinary care may be demonstrated by proof that the bank's procedures were below the standard or ordinary banking acumen or that the bank's employees failed to exercise due care in processing the items. Given the foregoing, therefore, where there is proof either that the bank's procedures are below industry standards or that the bank's employees failed to exercise care in paying checks, the defense of the customer's negligence is unavailable to the bank. The result is that the bank is then obligated to cover the losses of the customer.

 In the instant matter, Plaintiff contends that Bank of America should have realized that the subject check was counterfeit because a) the check was out of sequence, b) the check was of a denomination requiring manual evaluation, and c) there was no a "fraud alert" on the account at the time the Plaintiff received the check. Further, and based upon the fact that both GSS and the Bank of America were on notice of fraud affecting the account, the account should not have been in existence. GSS should have been provided with a new account number. Any comparative negligence determination should be by and between GSS and Bank of America. GSS was aware of the actual fraud involving its account prior to the date of Plaintiff's depositing of the counterfeit

<div align="center">9</div>

check.  Further, Bank of America should have noticed that the challenged check drawn on the account was different from those used in daily operations and which contained inconsistent security features and check numbers which were not in sequence with the checks numbers clearing the account during the relevant period of time.  Further, the amount of the check should have drawn special attention.  Accordingly, and pursuant to N.J.S.A. 12A:4-401, the check was not "properly payable" and the check should not have been honored by Bank of America.  Bank of America did not exercise reasonable commercial standards in paying the check, was aware of fraud involving the account, and despite its denomination, was paid as if there was nothing irregular about the check.  Manual verification was called for and Bank of America was negligent in paying the check.  If there was a fraud alert properly place on the account, the Bank of America teller who accepted the check for deposit would have halted the transaction.

Once it recognized its own negligence, and that it had allowed a counterfeit check to clear GSS' account when it was suppose to be "monitoring" the account, Bank of America immediately removed the funds from the Plaintiff's trust account notwithstanding the fact that its wiring department has just verified that the amounts were clear in allowing the wire to be transmitted to an outside bank.  The general principle guiding the UCC's allocation of losses from forged endorsements on checks is to place the loss on the party in the best position to avoid the loss, in this case:  Bank of America.  *See* Donald J. Rapson, Loss Allocation in Forgery and Fraud Cases: Significant Changes Under Revised Articles 3 and 4, 42 Ala.L.Rev. 435, 435 (1991); George G. Triantis, Allocation of Losses from Forged Indorsements on Checks and the Application of § 3-405 of the Uniform Commercial Code, 39 Okla.L.Rev. 669, 669 (1986).

Additionally, N.J.S.A. 12A:4-104(a)(10) states, in relevant part, that "[a]n item is finally paid by a payor bank when the bank has first done any of the following: (1) paid the item in cash; (2) settled for the item without having a right to revoke the settlement under statute, clearing-house rule, or agreement; or (3) made a provisional settlement for the item and failed to revoke the settlement in the time and manner permitted by statute, clearing-house rule, or agreement." The check was cleared in Plaintiff's account. The funds had physically been removed from GSS' account. As the funds were available, the check had cleared enabling Plaintiff to wire the funds on April 15, 2010.

Bank of America may contend that its contract(s) with Plaintiff absolves it from liability herein. However, Bank of America cannot contractually eliminate its requirement to exercise ordinary care. N.J.S.A. 12A:4-103, UCC Comment l, indicates:

Subsection (a) confers blanket power to vary all provisions of the Article by agreements of the ordinary kind. **The agreements may not disclaim a bank's responsibility for its own lack of good faith or failure to exercise ordinary care and may not limit the measure of damages for the lack of failure**, but this subsection   . . . approves the practice of parties determining by agreement the standards by which the responsibility is to be measured. In the absence of a showing that the standards manifestly are unreasonable, the agreement controls. . . **[Emphasis added.]**

Further, it is well settled that "[I]f a party's negligence substantially contributed to the unauthorized signature, that person is estopped from raising forgery as a defense against a holder in

11

due course, and a person may ratify a signature made without authority." 2-1B Negotiable Instruments Under the UCC § 1B.06; *See also* U.C.C. Rev. § 3-406(a); U.C.C. Rev. § 3-406(b).   As such, any shift in negligence allocation would be between GSS and Bank of America.  As a holder in due course, Plaintiff is the victim of the negligence of either one or both of these Defendants resulting from their failure to exercise reasonable and ordinary care relative to the transaction at bar.

### (B) PLAINTIFF IS SUFFERING IMMEDIATE AND IRREPARABLE HARM RESULTING FROM BANK OF AMERICA'S FREEZE AND CHARGE BACK OF ITS IOLTA ACCOUNT

Plaintiff is suffering immediate and irreparable harm because of the charge back and freeze worked on its IOLTA sub-accounts by Bank of America.  Plaintiff's business and reputation have been injured vis-à-vis other clients of the firm.  Such injury to business and reputation has typically been recognized as "irreparable injury" in the context of an injunctive relief analysis.  See Score Board, Inc. v. Upper Deck, 959 F.  Supp. 234, 240 (D.N.J. 1997); A.T. Hudson & Co. v. Donovan, 216 N.J. Super. 426, 433 (App. Div. 1987); In re Solari Industries, Inc. v. Malady, 55 N.J. 571, 586 (1970); Silverstein v. Abco Vending Service, 37 N.J. Super. 439, 446 (App. Div. 1955) (citing numerous authorities to this effect); and see Canterbury Green School, Inc. v. Riley, 833 F.Supp. 1097, 1105 (D.N.J. 1993) ("where the result of denying injunctive relief would be the destruction of an ongoing business, such a result generally constitutes irreparable injury"); Ferraiuolo v. Manno, 1 N.J. 105 (1948) (where our State's Supreme Court clearly held that injury to an individual's business, custom and profits, constitute irreparable injury warranting the issuance of a preliminary injunction). Importantly, the fact that the actions or conduct complained of may also give rise to monetary damages is of no moment under such circumstances.  See Score Board, supra, 959 F.Supp. at 240; United Board & Carton Corp. v. Britting, 63 N.J. Super. 517, 533 (Ch. Div. 1960); see also Wear-

Ever Aluminum, Inc. v. Towncraft, Inc., 75 N.J. Super. 136 (Ch. Div. 1962) (enjoining interference with prospective economic advantage).

Plaintiff is a "holder in due course" with reference to the counterfeit check (see above), and its assets are held in trust for the benefit of its clients. Plaintiff's fiduciary accounts are not assets of Plaintiff, but instead are segregated from the Plaintiff's assets. This means the assets are not subject to the claims of the its creditors and regardless of the bank's situation as trust, fiduciary or custodial, accounts remain the property of the account's owner(s). *See* 12 C.F.R. § 330.5(b) (Recognition of deposit ownership and fiduciary relationships); *see also* FDIC Advisory Opinions 98-2 and 92-30. The FDIC notes that fiduciary accounts are deposit accounts owned by one party but held in a fiduciary capacity by another party. Fiduciary relationships may include, but are not limited to, an agent, nominee, guardian, executor or custodian. Common fiduciary accounts include Uniform Transfers to Minors Act accounts, escrow accounts, Interest On Lawyer Trust Accounts and deposit accounts obtained through a broker.  In addition, assuming compliance with the record-keeping requirements described below, if a corporation or a partnership maintains deposit accounts in a representative or fiduciary capacity, such accounts are treated as custodial accounts and insured separately from the funds owned by the corporation or partnership. (*See* 12 C.F.R. sections 330.9 and 330.6)

In the present matter the Plaintiff's separate and segregated sub-accounts within its trust account are properly noted as such pursuant to applicable FDIC and New Jersey State Bar regulations and requirements.  As the client's funds are properly segregated, the funds are not the possession of the law firm but remain the funds of the individual client-account holders. Furthermore, and if this Court grants an injunction, Bank of America has not lost its claim for any

13

deficiency balance against the Plaintiff resulting from the overdraft.  In effect, the legal rights of

Bank of America are not affected.

As a small firm, the preservation of integrity and professionalism is paramount to continued

business.  The inability to access funds in the trust account is causing irreparable harm in that the

reputation of the firm is tarnished.  The other clients cannot complete their business transactions

that were entrusted to the law firm.  Currently, for instance, there is a client sub-account containing

funds which are to be held in escrow, or in trust, for environmental cleanup in the City of Newark

per Court Order of the New Jersey Superior Court, Law Division, Essex County.   Business

associates, i.e. title companies, which have referred business to Plaintiff since its inception now

threaten legal action for the non-payment of services and the failure of checks to clear due to

insufficient funds.  These funds are obviously held "in trust" and the account is so noted pursuant

to the requirements of the New Jersey Supreme Court, and the Office of Attorney Ethics.  The

account should not be subject to Plaintiff's creditors, or alleged creditor claims (Bank of America),

especially those that are spurious and without legal footing.   The loss of the reputation of the firm,

and threatened lawsuits by clients whose funds are within the fiduciary account, constitutes

irreparable and immediate harm to the reputation of the firm, and its attorneys.  Furthermore, the

continued employment of the attorneys and the paralegal and secretarial staff is threatened.  If the

restraints are not issued, the future of the firm is at substantial risk.

### (C)  A BALANCING OF THE HARDSHIP WEIGHS IN FAVOR OF THE PLAINTIFF

Plaintiff is similarly entitled to preliminary injunctive relief because a balancing of the

hardships weighs in favor of the Plaintiff vis-à-vis Bank of America.  By charging back and freezing

Plaintiff's IOLTA account, Bank of America is preventing Plaintiff from accessing the funds of other clients of the firm. This is injuring Plaintiff's business. (See above) The harm which Plaintiff is suffering greatly outweighs the harm which would befall Bank of America if this Court were to award Plaintiff preliminary injunctive relief, to put back the status quo *pendente lite*, to effectively put back into Plaintiff's IOLTA account the monies of other clients of the firm which were improperly charged by Bank of America. The balance of harm falls against the Plaintiff more sharply than as to Bank of America, which created the harm, in light of the Plaintiff's inability to access its clients funds for the legal transactions for which the funds were deposited. Due to this skewed balance of equities, preliminary injunctive relief should be awarded to the Plaintiff herein. Bank of America was only able to reverse the transaction once it committed its negligence as it acted as both payor and depositary bank. The loss as a result of the depositing of the counterfeit check should have rested with either Bank of America, or Global Stainless Supply, Inc., or both, and not upon the Plaintiff and its clients.

## (D) THE PUBLIC INTEREST WEIGHS IN FAVOR OF GRANTING PLAINTIFF PRELIMINARY INJUNCTIVE RELIEF

The final factor to be considered in determining whether to award Plaintiff preliminary injunctive relief is the public interest. Here, the public interest - the other clients of the firm who have nothing to do with the counterfeit check, weighs in favor of granting preliminary injunctive relief. The other clients of the Plaintiff should be permitted to access their funds. Those funds should not be frozen by Bank of America. Bank of America basically acted as the perpetrator, as well as the judge and the jury, in determining that the Plaintiff, and its clients, should bear the

responsibility for the Defendant's joint omissions and negligence without due process and in contravention to all applicable law and jurisprudence. As such, the public interest weighs in favor of granting Plaintiff preliminary injunctive relief. Plaintiff's Order to Show Cause Application for such preliminary injunctive relief should therefore be granted in all respects.

16

## CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that its Order to Show Cause application seeking preliminary injunctive relief be granted.

BERGWALL LAW FIRM, P.C.

By: _____
    Thomas Bergwall, Esq.

Dated: July 19, 2010

17



BERGWALL LAW FIRM, P.C.
165 Passaic Avenue
Fairfield, New Jersey 07004
Attorneys for the Plaintiff
Phone: (973) 276-6100
Fax:    (973) 276-6169
Email: tb@bergwalllawfirm.com

FILED
JUL 30 2010
FOR CLAUDE M. COLEMAN

| | |
|---|---|
| BERGWALL LAW FIRM, P.C.,<br><br>                              Plaintiff,<br><br>vs.<br><br>BANK OF AMERICA, N.A., GLOBAL STAINLESS SUPPLY, INC., SUMITOMO CORPORATION OF AMERICA,<br><br>                              Defendants. | SUPERIOR COURT OF NEW JERSEY<br>LAW DIVISION:ESSEX COUNTY<br><br>DOCKET NO. ESX-L 6154-10<br><br>*CIVIL ACTION*<br><br>ORDER TO SHOW CAUSE<br>WITHOUT TEMPORARY<br>RESTRAINTS PURSUANT TO RULE 4:52 |

**THIS MATTER** being brought before the Court by the Bergwall Law Firm, P.C., attorneys for Plaintiff, seeking relief by way of preliminary injunction pursuant to Rule 4:52, based upon the facts set forth in the Verified Complaint and Certification of Thomas Bergwall, Esq. filed herewith; and it appearing that Plaintiff is not seeking any interim temporary restraint; and for good cause shown,

It is on this ____30th____ day of July, 2010

**ORDERED** that Defendants appear and show cause before the Superior Court at the Essex County Courthouse in Newark, New Jersey at __9__ o'clock in the _fore_noon or as soon thereafter as counsel can be heard, on the _13th_ day of _Sept_, 2010 why an Order should not be issued preliminarily enjoining and restraining, and directing and requiring, Defendants, as follows:

a. Directing that Defendant, Bank of America, NA, immediately release the IOLTA Trust Account of Bergwall Law Firm, P.C. from the current state of overdraft so that third-party client sub-accounts, and the moneys contained therein, may be accessed pursuant to the Rules of the New Jersey Supreme Court and the FDIC;

c:\documents and settings\tom bergwall\my documents\otsc b of a\otsc wout temp restraints 7-19-10.doc

1

b. Directing the Defendant Bank of America, N.A. to credit the IOLTA account of Plaintiff the sum of $123,500.00 that was first credited to the account and subsequently charged (i.e. debited) to the account by Bank of America, N.A.

c. Directing that the Defendant, Global Stainless Supply, Inc., produce the last six (6) months of operating account statements from the business account bearing account number ▓▓▓▓ ▓▓▓▓▓

d. Directing that the Defendant, Bank of America, NA and Global Stainless Supply, Inc. produce any and all documentation concerning the investigation of this matter by any party, whether named in this suit or not, or any other investigation or matter involving forgery and/or fraudulent checks involving Global Stainless Supply, Inc. and/or its accounts of any type, including but not limited to, correspondence by and between Bank of America, and its employees, and the Federal Bureau of Investigation (FBI), FBI statements, Affidavits of Forgery or statements taken from employees of Global Stainless Supply, Inc., as well as the names, phone numbers and locations of the individuals at Bank of America, NA responsible for the decision to charge back the counterfeit check and overdraft the Bergwall Law Firm, P.C. IOLTA Trust Account; and

e. For such other and further relief as this Court deems reasonable and just.

And it is further **ORDERED** that:

1. A copy of this Order To Show Cause, Verified Complaint, Plaintiff's moving Brief, and the moving Certification of Thomas Bergwall, Esq. submitted in support of this application be served upon the Defendants within __5__ days of the date hereof, in accordance with Rule 4:4-3 and Rule 4:4-4, this being original process.

2. The Plaintiff must file with the Court its proof of service of the pleadings on the Defendants no later than three (3) days before the return date.

c:\documents and settings\tom bergwal\my documents\otsc b of a\otsc wout temp restraints 7-19-10.doc

3.      Defendants shall file and serve a written response to this Order To Show Cause and the request for entry of injunctive relief and proof of service by _Sept 3_, 2010. The original documents must be filed with the Clerk of the Superior Court in the County listed above. A list of these offices is provided. You must send a copy of your opposition papers directly to Judge _COLEMAN_, whose address is Essex County Veterans Courthouse, ~~50 West Market Street,~~ 450 Dr MLK Jr Blvd Newark, New Jersey 07102. You must also send a copy of your opposition papers to the Plaintiff's attorney whose name and address appears above. A telephone call will not protect your rights; you must file your opposition and pay any required fee, and serve your opposition on your adversary if you want the Court to hear your opposition to the injunctive relief the Plaintiff is seeking.

4.      The Plaintiff must file and serve any written reply to the Defendants' Order To Show Cause opposition by _Sept 8th_, 2010. The reply papers must be filed with the Clerk of the Superior Court in the County listed above and a copy of the reply papers must be sent directly to the chambers of Judge _C. M. Coleman_.

5.      If the Defendants do not file and serve opposition to this Order To Show Cause, the application will be decided on the papers on the return date and relief may be granted by default, provided that the Plaintiff files a proof of service and a proposed form of Order at least three (3) days prior to the return date.

6.      If the Plaintiff has not already done so, a proposed form of Order addressing the relief sought on the return date (along with a self-addressed, stamped, return envelope) must be submitted to the Court no later than three (3) days before the return date.

7.      Defendants take notice that the Plaintiff has filed a lawsuit against you in the Superior Court of New Jersey. The Verified Complaint provided with this Order To Show Cause states the basis of the lawsuit. If you dispute this Complaint, you, or your attorney, must file a written Answer to the Complaint and proof of service with 35 days from the date of service of the

c:\documents and settings\tom bergwall\my documents\otsc b of a\otsc wout temp restraints 7-19-10.doc

Order To Show Cause; not counting the day you received it. These documents must be filed with the Clerk of the Superior Court in the County listed above. A list of these offices is provided. You must also send a copy of your Answer to the Plaintiff's attorney whose name and address appear above. A telephone call will not protect your rights; you must file and serve your Answer (with the $135.00 fee) or Judgment may be entered against you by default. Please note: Opposition to the Order To Show Cause is not an Answer and you must file both. Please note further: if you do not file and serve an Answer within 35 days of this Order, the Court may enter default against you for the relief Plaintiff demands.

8.    If you cannot afford an attorney, you may call the Legal Services office in the county in which you live. A list of these offices is provided. If you do not have an attorney and are not eligible for free legal assistance you may obtain a referral to an attorney by calling one of the Lawyer Referral Services. A list of these numbers is also provided.

9.    The Court will entertain argument, but not testimony, on the return date of the Order To Show Cause, unless the Court and parties are advised to the contrary no later than 3 days before the return date.

CLAUDE M. COLEMAN, J.S.C.